ROBBINS GELLER RUDMAN
  & DOWD LLP
SHAWN A. WILLIAMS (213113)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
shawnw@rgrdlaw.com
      – and –
ROBBINS GELLER RUDMAN
  & DOWD LLP
DANIELLE S. MYERS (259916)
MICHAEL ALBERT (301120)
KENNETH P. DOLITSKY (345400)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
dmyers@rgrdlaw.com
malbert@rgrdlaw.com
kdolitsky@rgrdlaw.com

Proposed Lead Counsel for Proposed Lead Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CITY OF PONTIAC POLICE AND FIRE RETIREMENT SYSTEM, on Behalf of Itself and All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> SOLENO THERAPEUTICS, INC., et al., <br><br> Defendants. | Case No. 3:26-cv-01979-EMC <br><br> CLASS ACTION <br><br> THE PUBLIC PENSION FUNDS' REPLY IN FURTHER SUPPORT OF LEAD PLAINTIFF MOTION <br><br> DATE:     June 25, 2026 <br> TIME:     1:30 p.m. <br> CTRM:    5, 17th Floor <br> JUDGE:   Hon. Edward M. Chen |

4929-2074-0015.v2

## I.   INTRODUCTION

Oklahoma Firefighters should not be appointed lead plaintiff for two reasons.  First, Oklahoma Firefighters filed a sworn PSLRA Certification that included four transactions that were never executed, and corrected that filing 13 days after the statutory deadline.  Second, Oklahoma Firefighters is overseeing 18 separate securities and shareholder litigation matters, exceeding the PSLRA's five-in-three limit.  That the PSLRA allows for the bar to be lifted in certain situations does not save Oklahoma Firefighters here because its flawed Certification confirms it is stretched too thin.

Rather than engage with either issue on the merits, Oklahoma Firefighters' opposition devotes its argument to attacking one of the Public Pension Funds (CPERS) on the theory that CPERS's purchase of Soleno shares after the August and September 2025 partially corrective events renders it atypical and subject to a unique reliance defense.  That argument fails.  It overlooks that the Public Pension Funds combined purchased the majority of their shares before the first alleged corrective disclosure and that CPERS alone purchased 634 shares of Soleno common stock before that disclosure and held those shares throughout the Class Period, a before-and-after pattern that courts in this Circuit have held satisfies typicality.  It ignores that a recent decision in this Circuit to address the question appointed a lead plaintiff who purchased 99.93% of its class period shares after the first partial disclosure at issue.  And it is inconsistent with Oklahoma Firefighters' own trading in this case.

Oklahoma Firefighters' motion should be denied.  The Public Pension Funds' motion should be granted.

## II.   ARGUMENT

### A.   The Post-Disclosure-Purchase Argument Against CPERS Fails

Recognizing the weakness of its own motion, Oklahoma Firefighters contends that CPERS is subject to unique defenses because it "executed nearly all of its Class Period purchases of Soleno common stock after the first and second disclosures."  ECF 41 at 7 (emphasis omitted).[1]   That

---

[1]   Unless otherwise noted, all emphasis is added and citations are omitted.

argument fails for three reasons: (1) the Public Pension Funds, evaluated together, purchased the majority of their combined Class Period shares before any alleged disclosure; (2) the per se rule Oklahoma Firefighters invokes is not the rule courts in this Circuit apply; and (3) Oklahoma Firefighters' own conduct in this case contradicts the rule it urges.

**1.    The Public Pension Funds, Evaluated as a Whole, Do Not Present the Profile Oklahoma Firefighters Takes Issue With**

Oklahoma Firefighters' post-disclosure-purchase argument targets CPERS in isolation. But the Public Pension Funds have two members, and the question under the PSLRA is whether the group is subject to unique defenses that would render it incapable of adequately representing the class.  The cases finding post-disclosure purchases to create such a defense share a common feature: the challenged movant purchased all or nearly all of its shares after the alleged corrective event, leaving no pre-disclosure purchase entitled to the fraud-on-the-market presumption.  *See infra*. II.A.2.  Neither CPERS nor the Public Pension Funds presents that profile.

CPERS itself purchased 634 shares of Soleno common stock before the first alleged disclosure and held those shares through every subsequent event Oklahoma Firefighters identifies.  St. Louis Firemen, in turn, purchased 4,722 of its Class Period shares (out of 5,029 total shares purchased, or 94%) before any alleged disclosure.  The Public Pension Funds collectively purchased 10,374 shares during the Class Period.  Of those, 5,356 shares (or 51.6%) were purchased before the August and September 2025 corrective disclosures.  The Public Pension Funds are a before-and-after purchaser, the profile courts in this Circuit have held to satisfy typicality.  *See infra.* II.A.2.

The 48.4% post-disclosure figure is also not materially different from Oklahoma Firefighters' own 38.07%.  ECF 41 at 10 n.6.  The cases on which Oklahoma Firefighters relies involve movants who purchased 87%, or 100%, of their shares post-disclosure, with no class period purchases predating the alleged corrective event. *See infra* II.A.3. n.1.  That is not this case.

Oklahoma Firefighters' sole response to this problem is a footnote citing *Tsirekidze v. Syntax-Brillian Corp.*, 2008 WL 942273, at *4 (D. Ariz. Apr. 7, 2008), for the proposition that CPERS's alleged atypicality dooms the group as a whole.  ECF 41 at 8 n.4.  *Tsirekidze* does not

support that reading. It holds that courts will not disaggregate a jointly moving group to evaluate individual members in isolation. It does not hold that one member's alleged atypicality disqualifies a group whose trading profile does not exhibit the disqualifying characteristic. CPERS itself made pre-disclosure purchases and held those shares through every alleged corrective event. The Public Pension Funds, in turn, purchased the majority of their combined Class Period shares before any alleged disclosure. The unique reliance defense Oklahoma Firefighters describes does not apply here.

### 2. The Per Se Rule Oklahoma Firefighters Invokes Is Not the Rule Courts in This Circuit Apply

The PSLRA permits the presumption of adequacy to be rebutted only "upon proof" that the movant "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II). Oklahoma Firefighters' assertion that CPERS purchased 88.14% of its Soleno shares after the August 15 and September 10, 2025 partial corrective disclosures does not meet that standard. The 88.14% figure obscures that CPERS purchased 634 shares of Soleno common stock before the first alleged disclosure, and continued to hold those shares through the Class Period. Those 634 pre-disclosure shares place CPERS within the before-and-after-purchaser profile courts in this Circuit hold satisfies typicality.

The rule in this Circuit is the opposite of what Oklahoma Firefighters urges. As Judge Illston stated in *In re Connetics Corp. Sec. Litig.*, 257 F.R.D. 572, 577 (N.D. Cal. 2009): "[T]he weight of authority appears to favor the position that the purchase of stock after a partial disclosure is not a per-se bar to satisfying the typicality requirement." *Id.* (granting motion for class certification). That rule has been applied across both the lead plaintiff and class certification contexts in this Circuit. A putative class that includes purchasers throughout the class period necessarily includes purchasers who acquired shares after partial disclosures, and a representative who shares that profile is not unique to the class. *See In re Countrywide Fin. Corp. Sec. Litig.*, 273 F.R.D. 586, 602 (C.D. Cal. 2009) ("other class members also presumably purchased after [the] first corrective disclosure and during the disclosure period").

In *Schneider v. Champignon Brands Inc.*, 2021 WL 4935160 (C.D. Cal. June 29, 2021), the court appointed as lead plaintiff a movant who had purchased every one of his class period shares after multiple partial disclosures. The competing movant argued, just as Oklahoma Firefighters argues here, that the post-disclosure timing of the purchases rendered the movant atypical and inadequate. *Id.* at *3. The court rejected the argument, holding that "[t]he weight of authority 'favor[s] the position that the purchase of stock after a partial disclosure is not a per-se bar'" to typicality, and that the proposed class "is not limited to those who purchased shares ***only*** before the partial disclosures (and indeed, the Class will likely include those who purchased after the first or even second partial disclosure)." *Id.* at *3-*4 (emphasis in original). CPERS's post-disclosure purchasing pattern is materially less extreme than what the court in *Schneider* approved, and, unlike the *Schneider* movant, CPERS made and held pre-disclosure purchases.

In *Waterford Township Gen. Emps. Ret. Sys. v. Monolithic Power Sys., Inc.*, 2025 WL 2979940 (W.D. Wash. Aug. 25, 2025), the court confronted similarly extreme facts. The competing movant there argued that the presumptive lead plaintiff was atypical because it had purchased the majority of its class period shares after a partial disclosure. *Id.* at *5. The appointed lead plaintiff had purchased exactly one share before the first partial disclosure and 1,500 shares (99.93% of its total class period purchases) on the day immediately following that disclosure. The court found no typicality problem, holding that "'[t]he substantial majority of courts that have addressed the propriety of class certification based on the timing of the class representative's sale or purchases have found . . . that the timing of the transactions does not necessarily create fundamentally divergent interests with the putative class.'" *Id.* at *6. The court expressly declined to depart from that majority view in response to the same authorities Oklahoma Firefighters relies upon here. *Id.*

Other decisions in this Circuit are in accord. In *Sayce v. Forescout Techs., Inc.*, 2020 WL 6802469, at *4 (N.D. Cal. Nov. 19, 2020), Judge Illston held that the purchase of approximately 45% of a movant's shares after a Spruce Point Capital short-seller report did not defeat typicality. *Id.* And in *Tenneson v. Nikola Corp.*, 2024 WL 905244, at *10 (D. Ariz. Feb. 29, 2024), the court held that "courts in the Ninth Circuit have regularly determined that buying stock after a partial

corrective disclosure does not per se bar a plaintiff from satisfying" Rule 23(a); *see also Hessefort v. Super Micro Comput., Inc.*, 317 F. Supp. 3d 1056, 1060-61 (N.D. Cal. 2018) (rejecting post-disclosure-purchase typicality challenge and holding that "[t]he weight of authority is substantially against Oklahoma Pension's argument"); *Hurst v. Enphase Energy, Inc.*, 2020 WL 7025085, at *6 (N.D. Cal. Nov. 30, 2020) ("Courts in this district have found that class representatives who purchase shares after the revelation of a fraud are not necessarily atypical."); *Vreeland v. Metagenomi Inc.*, 2025 WL 4690434, at *1 (N.D. Cal. Feb. 10, 2025) (declining at the lead plaintiff stage to exclude post-disclosure purchases from loss analysis).[2]

### 3.   Oklahoma Firefighters' Own Conduct Forecloses the Rule It Urges

Oklahoma Firefighters' opposition contains a concession: it purchased 7,183 shares of Soleno stock after the same August and September 2025 disclosures it contends rendered CPERS's purchases atypical, representing 38.07% of its own total class period holdings.  ECF 41 at 10 n.6. Oklahoma Firefighters offers no explanation for why 38.07% is consistent with typicality while

---

[2]   The cases Oklahoma Firefighters relies upon are inapposite.  *See Faris v. Longtop Fin. Techs. Ltd.*, 2011 WL 4597553, at *8 (S.D.N.Y. Oct. 4, 2011) (disqualified members purchased 100% of their shares post-disclosure, and one member was simultaneously defendant in litigation alleging it knowingly received $261 million from a $1.4 billion Ponzi scheme); *Bhangal v. Haw. Elec. Indus., Inc.*, 2023 WL 8482871, at *3 (N.D. Cal. Dec. 7, 2023) (individual day-trader who bought 100% of his shares post-disclosure and sold "almost all" of them the next day); *Lundy v. Ideanomics, Inc.*, 2020 WL 7389027, at *3 (S.D.N.Y. Dec. 16, 2020) (individual movant purchased all of his shares after corrective disclosure); *Lemm v. N.Y. Cmty. Bancorp, Inc.*, 733 F. Supp. 3d 107, 116-17 (E.D.N.Y. 2024) (movant purchased 100% of its shares post-disclosure); *Berwecky v. Bear, Stearns & Co.*, 197 F.R.D. 65, 69-70 (S.D.N.Y. 2000) (proposed representatives purchased after the issuer ceased doing business and the SEC/NASD investigations into the fraud were public); *In re Valence Tech. Sec. Litig.*, 1996 WL 119468, at *5-*6 (N.D. Cal. Mar. 14, 1996) (individual investor who filed his own fraud suit and then tripled his holdings after a second disclosure was disqualified under mitigation-of-damages principles, not fraud-on-the-market reliance); *Erickson v. Snap, Inc.*, 2017 WL 11592635, at *3 (C.D. Cal. Sept. 18, 2017) (individual investor purchased more than 60% of shares "after the exact revelation of alleged fraud that [he] pled in his own complaint"); *George v. China Auto. Sys., Inc.*, 2013 WL 3357170, at *5-*6 (S.D.N.Y. July 3, 2013) (individual plaintiffs continued purchasing securities after filing the lawsuit and after moving for class certification, each was an in-and-out trader and the court independently found no efficient market); *GAMCO Invs., Inc. v. Vivendi, S.A.*, 917 F. Supp. 2d 246, 261-62 (S.D.N.Y. 2013) (post-class-action opt-out summary judgment decision against a value investor whose principals had private meetings with the issuer's CEO during the class period and the decision specifically recognizes that "'post-disclosure purchases will not prevent an investor from relying on the integrity of the market for pre-disclosure purchase'").

48.4% is disqualifying as a matter of law. The rule it urges, if applied, would also call into question its own adequacy on the same theory.

Oklahoma Firefighters' litigation history forecloses the rule even more directly. In *Steamfitters Local 449 Pension & Ret. Sec. Funds v. Extreme Networks, Inc.*, No. 3:24-cv-05101-TLT (N.D. Cal.), Oklahoma Firefighters is currently serving as lead plaintiff as part of a group of institutions despite the fact that ***it purchased 100% of its class period shares after an alleged corrective disclosure***. *See id.* ECF 23-2 (Oklahoma Firefighters' certification). Applying Oklahoma Firefighters' own rule, it (and the entire group of funds it is serving concurrently as lead plaintiff with) is atypical to serve as lead plaintiff. It is unclear why the Public Pension Funds would be atypical in this case, yet in another case pending in the same District, Oklahoma Firefighters is typical. What is clear is that Oklahoma Firefighters' position is not a principled rule. It is a positional one.

### B. Oklahoma Firefighters' False Certification and Excessive Caseload Are Each Independently Disqualifying

Oklahoma Firefighters' submission of a Certification containing four transactions that never occurred is enough on its own to deny its motion. In *Burns v. UP Fintech Holding Ltd.*, 2024 WL 387261 (C.D. Cal. Jan. 30, 2024), the court refused to appoint a lead plaintiff movant where the movant's certification, like here, contained "demonstrably false statements" that "raise[d] serious concerns regarding [the movant's] ability to adequately represent the class." *Id.* at *5. And, in *Camp v. Qualcomm Inc.*, 2019 WL 277360, at *3 (S.D. Cal. Jan. 22, 2019), the court held that a movant's "'willingness to make false statements under oath'" is a disqualifying consideration. And, in *Averza v. Super Micro Comput., Inc.*, 788 F. Supp. 3d 1060, 1082-83 (N.D. Cal. 2025), Judge Davila denied a lead plaintiff movant's motion where that movant's inaccurate sworn submissions demonstrated the kind of "inattention and carelessness" the lead plaintiff process is designed to filter out.

Oklahoma Firefighters' single footnote response opining that the error was "'minor or inadvertent,'" rests entirely on *Banerjee v. Avinger, Inc.*, 2017 WL 4552063 (N.D. Cal. Oct. 11, 2017). *Banerjee* illustrates the problem with Oklahoma Firefighters' position rather than

supporting it. The movants in *Banerjee* made each of the trades they certified, but the certification error there was that they listed trades on the settlement dates rather than the purchase dates, with the result being that the share prices in the certification technically fell outside of the range at which the stock traded on the dates listed. *Id.* at *3. The court treated that as a "clerical error," but nonetheless "warn[ed] [the movants] . . . that they must review the briefing and evidence that they submit more carefully in the future." *Id.* Oklahoma Firefighters did not misdate trades it actually made. It certified, under penalty of perjury, four transactions that never occurred. That kind of error implicates Rule 23's adequacy requirement because it shows the movant either reviewed the attached transaction schedule before signing and failed to recognize that four listed trades never happened, or did not review it at all before certifying its accuracy. *See In re Boeing Co. Aircraft Sec. Litig.*, 2020 WL 476658, at *5 (N.D. Ill. Jan. 28, 2020) ("Under either scenario, their failure to discover these obvious errors independently warrants a determination that the Wangs will not be adequate representatives of the class.").

The certification errors do not stand alone. Oklahoma Firefighters' own board minutes reflect concurrent supervision of 18 separate securities and shareholder litigation matters. That caseload exceeds the PSLRA's express limit of "more than 5 securities class actions . . . during any 3-year period." 15 U.S.C. §78u-4(a)(3)(B)(vi). While courts may exercise discretion to waive that limitation for sophisticated institutional investors, the rationale for that discretion is absent here. Where, as here, the movant has already demonstrated that its existing commitments exceed its capacity for diligent oversight, the basis for a waiver does not apply. *See Ind. Pub. Ret. Sys. v. Rivian Auto., Inc.*, 2024 WL 5279156, at *3 n.5 (C.D. Cal. Oct. 24, 2024) ("waiving that restriction here would not promote the objectives of the PSLRA").

The two grounds reinforce each other. Oklahoma Firefighters' failure to catch four nonexistent transactions in its own sworn Certification reflects the capacity issue that independently disqualifies it under the PSLRA's five-in-three limit. Because Oklahoma Firefighters has failed to make a *prima facie* showing of adequacy, it does not trigger the PSLRA's presumption, and consideration should proceed to the next movant in line, the Public Pension Funds. *In re Cavanaugh*, 306 F.3d 726, 732 (9th Cir. 2002).

THE PUBLIC PENSION FUNDS' REPLY IN FURTHER SUPPORT OF LEAD PLAINTIFF MOTION -
3:26-cv-01979-EMC                                                                             - 7 -
4929-2074-0015.v2

**III.   CONCLUSION**

Oklahoma Firefighters' false Certification and violation of the PSLRA's five-in-three prohibition preclude its appointment as lead plaintiff.  Its motion should be denied.  The Public Pension Funds satisfy Rule 23's adequacy and typicality requirements and no movant has provided the required "proof" to rebut the presumption in their favor.  The Public Pension Funds respectfully request that the Court grant their motion.

DATED:  May 26, 2026                    Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP

DANIELLE S. MYERS
MICHAEL ALBERT
KENNETH P. DOLITSKY


                              s/ Kenneth P. Dolitsky
                           KENNETH P. DOLITSKY

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
dmyers@rgrdlaw.com
malbert@rgrdlaw.com
kdolitsky@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
SHAWN A. WILLIAMS
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
shawnw@rgrdlaw.com

Proposed Lead Counsel for Proposed Lead Plaintiff