UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY OF PONTIAC POLICE AND FIRE RETIREMENT SYSTEM,<br><br>Plaintiff,<br><br>v.<br><br>SOLENO THERAPEUTICS, INC., et al.,<br><br>Defendants. | Case No.  26-cv-01979-EMC<br><br>**ORDER GRANTING OKLAHOMA FUND'S MOTION TO APPOINT; AND DENYING ST. LOUIS/BATON ROUGE FUNDS' MOTION TO APPOINT**<br><br>Docket Nos. 21, 29 |

This is a securities fraud action.  Defendants are Soleno Therapeutics, Inc. and certain of its officers.  Soleno is a pharmaceutical company.  As alleged, Defendants made misrepresentations about the company's sole commercial product, and, after the truth was disclosed over a series of events, the company's stock price decreased significantly.  *See* Compl. ¶ 55 ("As a result of these serial revelations, the price of Soleno common stock has declined significantly from a Class Period high of more than $90 per share to lows of less than $45 per share – a 50% decline and a fraction of the SPO price . . . .").  Now pending before the Court are two competing motions for appointment as Lead Plaintiff.  Both motions are filed by institutional investors.  One motion has been filed by two such investors working together: the Firemen's Retirement System of St. Louis and the City of Baton Rouge and Parish of East Baton Rouge Employees' Retirement System (collectively, the "St. Louis/Baton Rouge Funds").  The other motion has been filed by the Oklahoma Firefighters Pension and Retirement System (the "Oklahoma Fund").

/ / /

/ / /

The Court held a hearing on the motions to appoint on June 24, 2026. This order memorializes the Court's rulings and provides additional analysis as necessary.

Motions to appoint are governed by the PSLRA, specifically, 15 U.S.C. § 78u-4(a)(3)(B).[1] The Ninth Circuit has summarized the approach in § 78u-4(a)(3)(B) as follows:

> [T]he presumptive lead plaintiff [is] the one who "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." In other words, the district court must compare the financial stakes of the various plaintiffs and determine which one has the most to gain from the lawsuit. It must then focus its attention on that plaintiff and determine, based on the information he has provided in his pleadings and declarations, whether he satisfies the requirements of Rule 23(a), in particular those of "typicality" and "adequacy." If the plaintiff with the largest financial stake in the controversy provides information that satisfies these requirements, he becomes the presumptively most adequate plaintiff. If the plaintiff with the greatest financial stake does not satisfy the Rule 23(a) criteria, the court must repeat the inquiry, this time considering the plaintiff with the next-largest financial stake, until it finds a plaintiff who is both willing to serve and satisfies the requirements of Rule 23.

*In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002) (emphasis omitted). The next step is "to give other plaintiffs an opportunity to rebut the presumptive lead plaintiff's showing that it satisfies Rule 23's typicality and adequacy requirements." *Id.*

There is no dispute that, in the instant case, the Oklahoma Fund has the largest financial interest. The Oklahoma Fund's loss is greater than the combined losses of the St. Louis/Baton Rouge Funds (roughly, $526,000 compared to $272,000). The Oklahoma Fund has also made a showing that it meets the requirements of Rule 23(a), in particular those of typicality and adequacy.

/ / /

/ / /

---

[1] There is no dispute that the current named plaintiff (the City of Pontiac Police and Fire Retirement System) published the required PSLRA notice on March 6, 2026, via Globe Newswire. *See* 15 U.S.C.s. § 78u-4(a)(3)(A)(i); Docket No. 9 (notice). (This is the same date that the complaint was filed. *See* Docket No. 1 (complaint, filed on 3/6/2026).) There is also no dispute that the notice gave the information required by statute. All entities seeking appointment as Lead Plaintiff timely filed their motions thereafter (*i.e.*, within 60 days after notice issued).

United States District Court
Northern District of California

The St. Louis/Baton Rouge Funds challenge the adequacy of the Oklahoma Fund. Specifically, the St. Louis/Baton Rouge Funds argue that the Oklahoma Fund is inadequate because (1) it made an error on its PSLRA certification and (2) it is already involved in a number of securities or similar kind of actions.[2]  The error, however, was simply a minor, clerical one, *see* Rankin Decl. ¶ 14 (testifying that four transactions were inadvertently included in the original PSLRA certification; "[s]pecifically, the data analyst who prepared the Class Period transactions list for the Schedule A – by transposing the list from one spreadsheet to another in Excel – accidentally included two rows of data, hidden from view in Excel, that contained the two purchases and two sales"), and the error did *not* affect the amount of the Oklahoma Fund's loss – *i.e.*, the Fund's loss stayed the same at $526,759.27.  *See Feldman v. Alto Neuroscience, Inc.*, No. 25-cv-06105-NW, 2025 U.S. Dist. LEXIS 233896, at *6-7 (N.D. Cal. Dec. 1, 2025) (stating that "[c]ourts generally do not find that immaterial or clerical mistakes render a movant inadequate without more"); *see also David v. Brit. Am. Tobacco P.L.C.*, 24-CV-517 (AMD)(MMH), 2024 U.S. Dist. LEXIS 181441, at *16-18 (E.D.N.Y. Sept. 30, 2024) (noting that "[c]ourts disfavor movants for such mistakes when the loss estimates are egregiously inflated and thus exhibit 'a certain carelessness about detail that undermines the adequacy of the [movant] as a lead plaintiff in a complex securities class action'").

In addition, there is no indication that the Oklahoma Fund's error was the result of bad faith conduct, *see Sundaram v. Iovance Biotherapeutics, Inc.*, No. 25-cv-04177-EKL, 2025 U.S. Dist. LEXIS 261549, *16 (N.D. Cal. Dec. 15, 2025) (stating that "[a]n error in claimed losses may render a movant inadequate if there is evidence of bad faith or intent to deceive the court or the parties") (internal quotation marks omitted), nor is the error likely to divert the fact finder's attention from the merits and thus infect the claims of the class as a whole.  *See In re Apple Inc. Secs. Litig.*, No. 4:19-CV-2033-YGR, 2022 U.S. Dist. LEXIS 23771, at *14 (N.D. Cal. Feb. 4, 2022) ("Nor is a computational error the type of credibility issue that would 'divert the fact finders' attention from the merits and thus infect the claims of the class as a whole.'"); *see also In re*

---

[2] At the hearing, the Funds referenced a few other issues, but they were minor.

*United States District Court*
*Northern District of California*

*SolarCity Corp. Sec. Litig.*, No. 16-CV-04686-LHK, 2017 U.S. Dist. LEXIS 11553, at *17-19 (N.D. Cal. Jan. 25, 2017) (concluding that "error made when transferring stock prices from Plaintiff's brokerage account to Fish's motion was clearly an inadvertent error that will not 'infect the claims of the class as a whole'").

At the hearing, the St. Louis/Baton Rouge Funds acknowledged that the kind of clerical error here would not ordinarily prevent appointment. But, it argued, the error was emblematic of the Oklahoma Fund being stretched too thin – *i.e.*, it is involved in managing or monitoring too many securities and related actions.

The PSLRA contains a provision stating that, in general, no person may serve as lead plaintiff in more than five securities class actions in any three-year period. Title 15 U.S.C. § 78u-4(a)(3)(B)(vi) states: "Restrictions on professional plaintiffs. Except as the court may otherwise permit, consistent with the purposes of this section, a person may be a lead plaintiff, or an officer, director, or fiduciary of a lead plaintiff, in no more than 5 securities class actions brought as plaintiff class actions pursuant to the Federal Rules of Civil Procedure during any 3-year period."[3] This provision is known as the professional plaintiff bar.

There is some dispute as to whether the professional plaintiff bar applies to not just individual investor plaintiffs but also institutional investor plaintiffs (such as the Oklahoma Fund here). Many courts have held the bar does not apply to institutional investors – or at least should be narrowly applied with respect to such investors. *See In re Extreme Networks Inc. Sec. Litig.*, No. 15-cv-04883-BLF, 2016 U.S. Dist. LEXIS 84005, at *13-14 (N.D. Cal. June 28, 2016). In support, the courts have cited the legislative history for the PSLRA. *See In re SiRF Tech. Holdings, Inc. Sec. Litig.*, No. C 08-0856 MMC, 2008 U.S. Dist. LEXIS 43617, at *8 (N.D. Cal. May 27, 2008) (quoting legislative report stating that "'[i]nstitutional investors seeking to serve as lead plaintiff may need to exceed this limitation and do not represent the type of professional

---

[3] The term "brought" is equivalent to "filed." *See Cohen v. Luckin Coffee Inc.*, No. 1:20-cv-01293-LJL, 2020 U.S. Dist. LEXIS 103647, at *20-21 (S.D.N.Y. June 12, 2020) (rejecting an expansive interpretation of the term "brought" because that would be contrary to (1) its natural meaning and (2) another part of the PSLRA (§ 78u-4(a)(2)(A)(v)) which discusses the 5-in-3 rule and refers to the number of actions a proposed lead plaintiff has *filed*).

United States District Court
Northern District of California

plaintiff this legislation seeks to restrict[;] [a]s a result, the Conference Committee grants courts discretion to avoid the unintended consequence of disqualifying institutional investors from serving more than five times in three years").

At the hearing, the St. Louis/Baton Rouge Funds argued that the plain language of § 78u-4(a)(3)(B)(vi) establishes that it applies to institutional investors – *i.e.*, because the statute "contemplates that officers, directors, or fiduciaries of a lead plaintiff may be subject to the 5-and-3 cap." *Extreme*, 2016 U.S. Dist. LEXIS 84005, at *16. But as explained by one court, this fact

> does not necessarily lead to the conclusion that the professional plaintiff bar applies to institutional investors. The term, "institutional investor," holds a particular understanding within the world of securities litigation, and is distinguishable from, for instance, an entity created merely for the purpose of holding securities to claim standing in securities class action lawsuits.

*Id.* In addition, the professional plaintiff bar could still apply to an entity other than one formed solely to claim standing – *e.g.*, a partnership, limited liability company, or a trust. The statutory language is not surplusage and does not mandate inclusion of institutional investors of the type contemplated by Congress.

The Court, therefore, holds (as most courts have) that the professional plaintiff bar does not apply to institutional investors such as the Oklahoma Fund.

That being said, the Court's holding has no practical impact in the instant case. Even though the bar does *not* apply to institutional investors, that does not preclude the Court from still considering whether the Oklahoma Fund might be inadequate because it is "stretched too thin." Conversely, even if the professional plaintiff bar *does* apply to institutional investors, the Court still has the discretion to decline application of the bar, so long as that would be consistent with the purposes of § 78u-4(a).

At the hearing, the St. Louis/Baton Rouge Funds suggested that, in the former situation, they would have the burden of showing that the Oklahoma Fund is inadequate; in the latter situation, the burden would be on the Oklahoma Fund to overcome the professional plaintiff bar. In the instant case, the differing burdens are not material.

/ / /

5

United States District Court
Northern District of California

The Oklahoma Fund and the St. Louis/Baton Rouge Funds disagree as to how many securities class actions the Oklahoma Fund is currently involved in (*i.e.*, the number could affect the Oklahoma Fund's ability to be an adequate Lead Plaintiff here). The Oklahoma Fund maintains that only six securities class actions should count. The St. Louis/Baton Rouge Funds argue that there are as many as ten securities class actions that should count (which includes cases on appeal and cases that have settled and for which only distributions are still pending). Given that a concern underlying subsection (vi) is the limitation of the lead plaintiff's resources, it makes little sense to count cases that are at a stage that demands far less attention than those actively being litigated. But even assuming that there are as many as ten cases being led by the Oklahoma Fund, there is no indication that the Fund's involvement would compromise its ability to be Lead Plaintiff in this case. The Oklahoma Fund is a large institutional investor. It does not have the same counsel for all of the cases and is not simply a litigation vehicle for a particular law firm. Furthermore, the Fund has served as a lead plaintiff in a number of prior cases and obtained significant successful results. Nothing indicates its resources are being unreasonably stretched.

Accordingly, the Court appoints the Oklahoma Fund as Lead Plaintiff in this case. In addition, the Court approves the Fund's selection of Saxena White as its counsel. The Fund has made a sufficient showing that its selection of Saxena White is reasonable. *See Wayne v. Maxeon Solar Techs., Ltd.*, No. 24-cv-03869-EMC, 2024 U.S. Dist. LEXIS 190094, at *29-30 (N.D. Cal. Oct. 18, 2024) ("The PSLRA evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention. Courts have indicated that a court should interfere with the lead plaintiff's selection of counsel only when warranted to protect the interests of the class.") (internal quotation marks omitted).

The Oklahoma Fund and Soleno shall immediately meet and confer to discuss scheduling in the case, including but not limited to deadlines for the filing of a consolidated amended complaint and a response thereto. They shall submit a proposed scheduling order within two weeks of the date of this order. In addition, within one week from the date of this order, the Oklahoma Fund shall file a protocol for controlling fees and costs as this Court has implemented in, *e.g.*, *In re Carrier IQ Consumer Privacy Litigation*, No. 12-md-02330-EMC, Docket No. 100

United States District Court
Northern District of California

(N.D. Cal.); *In re Chrysler-Dodge-Jeep Ecodiesel Marketing, Sales Practices & Products Liability Litigation*, No. 17-md-2777 EMC (N.D. Cal.) (Docket No. 181); and *In re Fibrogen, Inc. Securities Litigation*, No. C-21-2623 EMC (N.D. Cal.) (Docket No. 94).

This order disposes of Docket Nos. 21 and 29.

**IT IS SO ORDERED**.

Dated: June 25, 2026

_____

EDWARD M. CHEN
United States District Judge